UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LONNIE L. PARKER #200008,

    Plaintiff,

v.

UNKNOWN KELLER et al.,

    Defendants.
_____/

Case No. 2:17-cv-00102

Hon. Robert J. Jonker
U.S. District Judge

**REPORT AND RECOMMENDATION**

    This is a civil rights action brought by state prisoner Lonnie L. Parker pursuant to 42 U.S.C. § 1983. Parker asserts retaliation and conspiracy claims against Defendants Unknown Keller, Unknown Lovin, and Unknown Perry. Defendant Perry filed a motion for summary judgment (ECF No. 33) in which he argues (1) that Parker failed to exhaust his administrative remedies, and (2) that he (Defendant Perry) is entitled to qualified immunity. Because Parker failed to exhaust his administrative remedies, the undersigned respectfully recommends that the Court grant Defendant Perry's motion for summary judgment. If this recommendation is accepted, the remaining claims in this case would be retaliation and conspiracy claims against Defendants Keller and Lovin.[1]

---

[1]     The undersigned notes that there was a long delay in effectuating service on Defendants Keller and Lovin. Both Defendants Keller and Lovin have now been served and, as stated during the August 12, 2019 status conference, the undersigned will issue a new case management order once this summary judgment motion is resolved by the Court.

## Factual Allegations

The claims in this case arise from a series of events that occurred while Parker was working as a cook at the Chippewa Correctional Facility (URF). During the relevant time period, the Michigan Department of Corrections (MDOC) contracted with Trinity Service Group to provide food at the prisons. Defendants Keller and Lovin worked for Trinity and were employed as "food steward" and "supervising steward," respectively. (ECF No. 1, PageID.6.) Defendant Perry worked for the MDOC and was employed as a Correctional Officer at URF.

Parker alleges that, beginning in August 2016, he observed "ethical, safety, security, sanitary, policy, and civil rights violations taking place by multiple Trinity personnel" while he was working as a cook. (ECF No. 1, PageID.7.) Thus, Parker made several complaints and filed multiple grievances against Trinity employees.

Parker says that, on November 10, 2016, he received a "retaliatory false work report" from another Trinity employee. (ECF No. 1, PageID.9.) Parker then went to talk to that employee's supervisor, Defendant Lovin, about the false work report. In response, Defendant Lovin allegedly "told [Parker] if he didn't want to be written up he should stop writing up his staff." (ECF No. 1, PageID.9.)

In December 2016, Parker filed a grievance against one of Defendant Lovin's supervisors. On December 25, 2016, Defendant Lovin reviewed that grievance and allegedly told Parker that he was crazy for grieving the boss and that he must be suicidal.

On January 4, 2017, while Parker was working in the kitchen, another Trinity employee came in and told Parker that the green peas needed to be thrown out because of a recall. Parker then asked if the chicken also needed to be thrown out because it also contained green peas. Parker says he was told to serve the chicken anyway. Despite being told to serve the chicken, Parker states that the chicken was thrown out and not served at the prison. Parker says this angered Defendant Keller, and Defendant Keller, who wanted Parker fired. Parker says that Defendant Keller then told him that he should quit, but Parker refused to quit. According to Parker, he then attempted to put some chicken patties in the refrigerator, but it was blocked so he gave the chicken patties to another worker inside the refrigerator. Parker states that Defendant Keller later wrote a false misconduct report claiming that Parker disobeyed a direct order by refusing to put the chicken away. The next morning, Defendant Perry allegedly told Parker that he had a "deeply personal relationship with Defendant Keller and will do 'whatever' it takes to cover her 'butt.'" (ECF No. 1, PageID.13.)

Parker was eventually cleared of the misconduct report. On January 11, 2017, Parker filed two grievances against Defendant Keller pertaining to the incident. Despite the fact that Parker was cleared of the misconduct report, Defendant Perry submitted a work evaluation that stated that Parker received a misconduct for disobeying a direct order. This work evaluation was dated January 24, 2017. Parker only learned of the allegedly false work evaluation several weeks later.

On January 31, 2017, Defendant Perry allegedly warned Parker to resolve the grievances against Defendant Keller by "signing off." (ECF No. 1, PageID.14.)

On February 1, 2017, Defendant Lovin fired Parker because Parker possessed unauthorized food items. Parker alleges that he was authorized to possess the food items. Parker states that it was common practice for prisoner workers to eat leftovers. Parker states that, on the day in question, Defendant Keller gave all the inmates permission to eat the leftover hamburgers. When Parker was putting the extra hamburgers on the counter, Defendant Lovin approached him and informed him that he was being terminated.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**Analysis**

Defendant Perry argues (1) that Parker failed to exhaust his administrative remedies, and (2) that he (Defendant Perry) is entitled to qualified immunity. Because Parker failed to exhaust his administrative remedies, the undersigned respectfully recommends that the Court grant Defendant Perry's motion for summary judgment.

**I.     Exhaustion of Administrative Remedies**

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions

under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal

review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, No. 1:07-cv-004, 2007 WL 3244075, at *5 (W.D. Mich. Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (eff. date 07/09/07, superseded on 03/18/19), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ P, V.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ V.  The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶

In this case, Defendant Perry argues Parker exhausted only one grievance related to this case through Step III – Grievance URF-1702-0402-02B. In that grievance, filed on February 5, 2017, Parker mentions both Defendants Lovin and Keller and complains that he was fired in retaliation for his complaints. (ECF No. 34-3, PageID.144.) This grievance was denied at each step. (ECF No. 34-3, PageID.146-148.) Notably, Parker failed to name Defendant Perry at any step of grievance as required by MDOC Policy Directive 03.02.130 at ¶ R. Because Parker failed to name Defendant Perry, this grievance cannot be used to exhaust the claims against Defendant Perry.

Parker, however, argues that he exhausted his administrative remedies on the claims against Defendant Perry in a second grievance – Grievance URF-1702-0467-

28A. Parker filed this grievance on February 9, 2017. (ECF No. 39-8, PageID.206.) In addition to writing the same retaliation claims against Defendants Lovin and Keller, Parker alleged that Defendant Perry conspired with the other Defendants by writing a false work report and "promoting a falsely motivated termination." The grievance was rejected as duplicative of Parker's first grievance. (ECF No. 39-8, PageID.210.) The rejection was upheld through Step III. (ECF No. 39-8, PageID.208.)

A properly rejected grievance cannot be used to exhaust Parker's administrative remedies. Here, the MDOC properly rejected Parker's second grievance. The grievance contained many of the same facts and was based on the same incident – Parker being fired. Parker may not have found out about the "false work report" until after he filed the first grievance, but he still knew of Defendant Perry's involvement based on the other interactions between Defendant Perry and him in January 2017. Specifically, on January 5, 2017, Parker alleged that Defendant Perry said he had a "deeply personal relationship with Defendant Keller and will do 'whatever' it takes to cover her 'butt.'" (ECF No. 1, PageID.13.) And, on January 31, 2017, Parker alleged that Defendant Perry "warned" him to resolve the grievances against Defendant Keller by "signing off." (ECF No. 1, PageID.14.) But Parker failed to include any of these allegations in the first grievance. Because the two grievances concerned the same incident and Parker had knowledge of Defendant Perry's involvement prior to filing the first grievance, the undersigned finds that the second grievance was properly rejected. Therefore, in the opinion of the undersigned, Parker failed to exhaust his administrative remedies on the claims against Defendant Perry.

## Recommendation

Accordingly, the undersigned respectfully recommends that Defendant Perry's motion for summary judgment be granted.[2] Therefore, Defendant Perry should be dismissed from this case.

If this recommendation is accepted, the remaining claims would be retaliation and conspiracy claims against Defendants Keller and Lovin.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: August 27, 2019

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE

---

[2] Because Parker failed to exhaust his administrative remedies, the undersigned need not address Defendant Perry's argument that he is entitled to qualified immunity. Nonetheless, the undersigned notes that Defendant Perry likely did not have sufficient personal involvement to establish liability under § 1983. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976) ("To establish the liability of any individual defendant, the plaintiff must show that that particular defendant was personally involved in the activities giving rise to the plaintiff's claims."). Here, Defendant Lovin fired Parker on February 2, 2017, because Parker filed grievances on Defendant Keller. Defendant Perry does not appear to have any involvement in the firing that occurred on February 2, 2017.