UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LONNIE L. PARKER #200008,

    Plaintiff,

v.

UNKNOWN KELLER, et al.,

    Defendants.

_____/

Case No. 2:17-cv-00102

Hon. Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.   Introduction

This report and recommendation (R&R) addresses Defendants' motion for summary judgment.  (ECF No. 96.)

State prisoner Lonnie Parker filed this civil rights action pursuant to 42 U.S.C. § 1983 by filing an unverified complaint on June 8, 2017.  (ECF No. 1.)  Parker's complaint relates to events that took place in early 2017 at the Chippewa Correctional Facility (URF) while Parker was working as a cook.  Parker alleges that Food Stewards Keller and Lovin[1] retaliated against him, in violation of the First Amendment.  Specifically, Parker claims that Defendants orchestrated a situation

---

[1]   Keller and Lovin were employees of Trinity Service Group, which is a food services contractor for the Michigan Department of Corrections (MDOC).  (ECF No. 96, PageID.482.)

1

where Parker would be terminated from his kitchen employment in retaliation for Parker filing grievances.

In their motion for summary judgment (ECF No. 96), Defendants contend that:

1. that Parker failed to properly exhaust his claims against Keller;

2. that they (Defendants) are not state actors subject to liability under Section 1983;

3. that Parker has no Constitutional right to kitchen or prison employment, and that Parker failed to establish that Defendants took adverse actions against Parker and/or that any alleged action was not the proximate cause of Parker's termination of employment; and

4. that Parker failed to establish that Defendants engaged in a conspiracy to violate his First Amendment rights.

Parker filed what appears to be verified response[2] that disputes Defendants' arguments and attests to facts that speak to the elements of his claims. (ECF No. 103.)

In reply, Defendants argue that Parker failed to provide evidence that creates a genuine issue of fact and that the Court should not consider two affidavits attached

---

[2] At the end of Parker's response, he provided a verification that appeared to meet the requirements of 28 U.S.C. § 1746. (ECF No. 103, PageID.542.) Because Parker provided the necessary verification and is a *pro se* litigant, the undersigned treats the facts provided in his response as the equivalent of those stated in an affidavit.

to Parker's response. (ECF No. 107.) Defendants also reiterate their main arguments.

## II. Additional Relevant Procedural History

Parker sued Defendants in their personal capacities. He seeks costs, fees and damages. (ECF No. 1.)

On September 17, 2018, CO Perry filed a motion for summary judgment and a supporting brief. (ECF No. 33, 34.) CO Perry argued that CO Parker failed to properly exhaust the claims against him. The Court agreed and granted CO Perry's motion. (ECF Nos. 58, 59.) As a result, FS Keller and FS Lovin are the only defendants still in the case.

## III. Summary of Plaintiff's Allegations

Parker asserted three claims against the remaining defendants. The three remaining claims are summarized below.

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | FS Keller | 1st Amendment Retaliation | 01/04/2017-01/11/2017 | FS Keller ejected Parker from the kitchen and issued Parker a false misconduct ticket. The misconduct ticket was allegedly motivated by filing of previous grievances against prison officials. (ECF No. 1, PageID.11-12.) |
| 2 | FS Lovin | 1st Amendment Retaliation | 02/1/2017-02/02/2017 | FS Lovin falsely alleged Parker possessed unauthorized food items. Parker claims this should have been written up as a misconduct ticket, but a misconduct ticket was intentionally never issued as it would allow Parker to investigate the matter and keep his job in the kitchen. This false report led to Parker being terminated from his position in the kitchen, and Parker claims this was done in response to complaints he had made against kitchen staff. (ECF No. 1, PageID.14-15.) |

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 3 | FS Keller and FS Lovin | 1st Amendment Retaliation Conspiracy | 02/01/2017-02/02/2017 | FS Keller gave permission for prisoners working in the kitchen to eat the leftovers as it was common practice to do so. (ECF No. 1, PageID.16.) Parker attempted to take some leftover hamburger, when he was approached by FS Lovin who told him he "didn't enjoy the perks of others anymore." (*Id.*) He was asked to remove his jacket, and was terminated for stealing food. (*Id.*) He was told by Lovin that the actual reason for this happening was him continuing to write other kitchen staff up. (ECF No. 1, PageID.15.) |

### IV. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### V. Exhaustion of Administrative Remedies (Defendants' 1st argument)

    a. Applicable Law

4

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the

5

administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at \*12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in

6

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004). However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

### b. Analysis

Here, Defendants argue that Parker failed to properly exhaust his First Amendment claim against FS Keller (argument 1). (ECF No.96, PageID.478.) Specifically, Defendants challenge the sufficiency of grievance **URF-17-02-0402-02B**, which the parties acknowledge is the only grievance at issue. (ECF No. 97-4, PageID.510.) For the following reasons, the undersigned concludes that there is a genuine issue of fact as to whether Parker failed to properly exhaust his claim against FS Keller.

The parties do not dispute that grievance **URF-17-02-0402-02B** – the grievance identified by the parties as the only relevant grievance – was denied at Steps I, II, and III. There is also no dispute that Parker named FS Keller at Step I. (*Id.*; ECF No. 97-4, PageID.510 (Grievance **URF-17-02-0402-02B** at Step I).) Instead, Defendants challenge the sufficiency of grievance **URF-17-02-0402-02B**. Specifically, Defendants contend that Parker failed to explain FS Keller's wrongful act, how she conspired with FS Lovin, and/or why FS Keller would retaliate against Parker. The undersigned disagrees.

At Step I of grievance **URF-17-02-0402-02B**, Parker complains about being inappropriately fired from his kitchen staff position *by Lovin*, not FS Keller. (ECF

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

8

No. 97-4, PageID.510.) The body of the supporting paragraph also focuses on actions by FS Lovin. But, the supporting paragraph also discusses actions by FS Keller. Parker's Step I grievance is shown below.

[Image of Michigan Department of Corrections Prisoner/Parolee Grievance Form filed by Lonnie Parker, dated 2/5/17, Grievance Identifier URF-17-02-0410-02-0281-T, describing issues with FS Lovin and FS Keller regarding Trinity food service practices and grievance retaliation.]

(*Id.*)

Ordinarily, this Step I grievance would not be sufficient to exhaust a subsequent claim against FS Keller because FS Lovin was the focus of the grievance. But, here, MDOC officials discussed actions by staff generally, not just actions by FS Lovin. A portion of the Step I response is shown below.

[Image of Investigation Information section stating: "Staff were interviewed regarding the events described in the grievance and stated that at no point was the grievant treated unfairly. Upon review of the grievant's work assignment evaluations, both completed by staff not listed on this grievance, the grievant displays a history of difficulty accepting authority while on assignment and performing tasks as expected. No merit to inmate's claim of being treated unfairly or unprofessionally by staff was found. Grievant was found to be in possession of food items without authorization to do so. He was disciplined accordingly."]

9

(*Id.*, PageID.510.)

Because Parker discussed FS Keller in his Step I grievance and the MDOC addressed actions by staff generally, the undersigned concludes that there is genuine issue of fact as to whether Parker properly exhausted his claim against FS Keller.

## VI. State Actor Argument (Defendants' 2nd Argument)

Defendants argue that Parker's Section 1983 claims against them fail as a matter of law because they are not state actors. (ECF No. 96, PageID.482-485.) The undersigned disagrees. On numerous occasions, this Court and others have held that Trinity and its employees qualify as state actors because they provide food services to incarcerated prisoners, a traditional state function. *See, e.g., Bragg v. Staff*, No. 1:16-CV-1271, 2019 WL 5273761, at *4 (W.D. Mich. July 23, 2019), *report and recommendation adopted*, No. 1:16-CV-1271, 2019 WL 4409486 (W.D. Mich. Sept. 16, 2019); *Banks v. Torrey*, No. 1:18-CV-538, 2019 WL 8105853, at *3 (W.D. Mich. Sept. 16, 2019*), report and recommendation adopted*, No. 1:18-CV-538, 2020 WL 113667 (W.D. Mich. Jan. 10, 2020); *Roden v. Plont*, No. 2:17-CV-00188, 2019 WL 5275035, at *3 (W.D. Mich. Aug. 14, 2019), *report and recommendation adopted*, No. 2:17-CV-188, 2019 WL 4593514 (W.D. Mich. Sept. 23, 2019); *Davis v. Alvarez*, No. CV 19-13062, 2020 WL 6390493, at *2 (E.D. Mich. Aug. 6, 2020), *report and recommendation adopted*, No. 19-13062, 2020 WL 5362067 (E.D. Mich. Sept. 8, 2020).

## VII. Merits Argument (Defendants' 3rd Argument)

The elements of a First Amendment retaliation claim are well known. Plaintiff must show (1) that Plaintiff was engaged in constitutionally protected conduct, (2)

that Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in the protected conduct in question, and (3) that there existed a causal connection between the protected conduct and the adverse action – in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Here, Defendants argue that prisoners do not have a constitutional right to prison employment. (ECF No. 96, PageID.485-487.) Second, Defendants say that their alleged conduct cannot be adverse because it did not deter Parker from continuing to file grievances. And third, Defendants add that Parker failed to provide any evidence, apart from temporal proximity, to show that their alleged conduct was a result motivated by Parker's filing of grievances. For the following reasons, the undersigned disagrees with all three arguments.

### a. Prison Employment Argument

Defendant's prison-employment argument confuses the concept of protected conduct with adverse action. The basis of Parker's claims against Defendants is that they retaliated against him for filing grievances in the past. In Parker's verified answer, he stated that he wrote several grievances against kitchen staff. (ECF No. 103, PageID.537.) That constitutes protected conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (holding that, as a threshold matter, the filing of a grievance is conduct that is afforded constitutional protection). Parker need not show that he was deprived of any other constitutionally protected rights or benefits; he

11

simply needed to show that engaged in a protected conduct – which he has – and that Defendants took an adverse action because of the protected conduct.

The case purported to support Defendants' position involved a prisoner-plaintiff seeking to establish a First Amendment retaliation claim where the alleged protected conduct was prison employment. (ECF No. 96, PageID.485-487 (citing *Nettles v. Smoker*, No. 1:13-CV-1353, 2015 WL 1565429, at *4 (W.D. Mich. Apr. 8, 2015)).) Again, Parker's First Amendment retaliation claims are based on his filing of grievances, which do amount to protected conduct.

For those reasons, the undersigned concludes that Defendants' prisoner-employment argument is not supported by case law.

### b. Ordinary Firmness Argument

Defendants state that an action is only adverse if it deters a person of ordinary firmness from engaging in protected conduct. (ECF No. 96, PageID.488.) This is correct. Defendants then argue that their actions did not deter Parker from "persistently" filing grievances against staff. (*Id.*) Therefore, according to Defendants, Parker is unable to claim that he suffered any "adverse action" deterring him from engaging in protected conduct. (*Id.*) The undersigned disagrees.

The fact that Parker continued to file grievances despite an adverse action being taken against him does not categorically prove that an individual of ordinary firmness would not be deterred by the adverse action when engaging in protected conduct. Adverse action does not have to deter every person, nor any person in particular from engaging in protected conduct. Adverse action only needs to deter an

12

individual of ordinary firmness from engaging in protected conduct. *Catanzaro v. Mich. Dep't of Corr.*, 2011 WL 7113245, at *8-10 (6th Cir. Dec. 16, 2011). As held by the Sixth Circuit, "[w]hether an alleged adverse action is sufficient to deter a person of ordinary firmness is generally a question of fact." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583–84 (6th Cir. 2012) (citing *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)).

Similarly, Parker attests that FS Lovin also falsely charged Parker with stealing hamburger patties despite being aware that Parker had permission to have the food. (ECF No. 103, PageID.554.) Parker adds that FS Lovin later told him that he was being fired because he was told to stop filing grievances but did not. (*Id.*, PageID.554-555.) Based on the evidence provided by Parker, the undersigned concludes that there is a genuine question of fact as to whether FS Lovin took an adverse action against Parker.

### c. Causation

Lastly, Defendants argue that there is a lack of causation between the alleged adverse action and the protected conduct in which Parker was engaged. (ECF No. 96. PageID.489.) Defendants argue that mere temporal proximity is insufficient to establish a retaliatory motive. *Smith*, 250 F.3d at 1038. Defendants state that the proximate cause of Parker's termination was his inability to follow prison procedures and theft of food. (ECF No. 96. PageID.489.)

Parker, however, paints a much different picture. Parker attests that FS Keller was aware that he was a "whistleblower." (ECF No. 103, PageID.538.) Parker

13

attests that FS Keller angrily approached him after the kitchen meals were changed from regular chicken to chicken patties, telling him she did not know why he had not been fired yet. (*Id.*) Parker told FS Keller that the chicken patties needed to be put into the cooler and she began shouting curses at Parker for wasting her time. (*Id.*) Parker told FS Keller to watch her language, and she told Parker to remove his uniform and return to his cell pending termination. (*Id.*) When Parker asked for the reason, she stated it was due to the grievances he had filed. (*Id.*) Parker attests that he was issued a false misconduct ticket for disobeying an order, which was then investigated and found baseless, so he was allowed to go back to work. (ECF No. 103, PageID.539.)

Parker attests that FS Keller told him he could take leftover hamburger meat. (ECF No. 103, PageID.539.) Parker also says that once he took this meat, FS Lovin came up to him and terminated him for hiding the hamburger meat which was a violation of prison policy. (ECF No. 103, PageID.540.) Afterwards, he was immediately terminated and had his jacket taken away. (*Id.*) He attests that he was directly told by FS Lovin this was due to the complaints he had been writing on kitchen staff. (*Id.*)

In Parker's response, he swears that, after FS Keller expressed a desire to fire Parker because of his tendency to file grievances, she issued him a false misconduct ticket. (ECF No. 103, PageID.552.)

Accordingly, the undersigned concludes that there is a genuine issue of material fact as to whether there existed a causal connection between the adverse

action taken against Parker by FS Keller and FS Lovin and Parker's protected conduct.

### VIII. Conspiracy Claim Argument (Defendants' 4th Argument)

Defendants argue that Parker cannot establish presence of any conspiracy between the Defendants. (ECF No. 96, PageID.491.) A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). To prevail on a civil conspiracy claim, Parker must show that (1) a "single plan" existed, (2) the defendants "shared in the general conspiratorial objective" to deprive her constitutional (or federal statutory) rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused injury" to him. *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)). "Although circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020) (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011)).

Defendants argue that the record lacks a single fact supporting Parker's claim of a conspiracy. (ECF No. 96, PageID.491.) Since making the argument, Parker has provided such evidence in his verified response. (ECF No. 103, PageID.539-541.) Parker attests that FS Keller gave himself and other prisoners authorization to take leftover hamburger meat. (*Id.* at PageID.540.) Parker attests that FS Lovin observed

15

this occur and told him that he would be terminated for possessing the hamburger. (*Id.*) Parker attests that he asked why this was being done to him, and FS Lovin responded that it was because he had not stopped filing grievances against FS Keller. (*Id.*) Parker attests that he was not issued a misconduct ticket for this event, and he was told directly by FS Lovin that he was not issuing a misconduct ticket for his termination so he would not be able to pursue an investigation of the incident and return to work (as Parker says he did with the misconduct ticket from FS Keller.) (*Id.* at PageID.541.)

Therefore, the undersigned concludes that there is a genuine issue of material fact as to the presence of a conspiracy between Defendants.

## IX. Recommendation

Accordingly, it is respectfully recommended that the Court deny Defendants' summary judgment motion (ECF No. 96). If the Court accepts this recommendation, all three claims will remain.

Dated: July 20, 2021                    /s/ *Maarten Vermaat*
                                         MAARTEN VERMAAT
                                         U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).